**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **IN RE: GERBER PRODUCTS COMPANY BABY FOOD LITIGATION** <br><br> **This Document Relates To:** <br> **ALL ACTIONS** | Lead Case No. 21-1977 (CCC) <br><br> OPINION |

**FALK, Chief U.S.M.J.**

This is a consolidated case comprised of 13 putative class actions[1] asserting a variety of claims against Defendant Gerber Products Company ("Gerber"). This matter comes before the Court upon a motion to transfer the consolidated action to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). [CM/ECF 21-2516, No. 8.] The motion is opposed. The motion is decided on the papers. Fed. R. Civ. P. 78(b). For the reasons set forth below, Plaintiffs' motion to transfer is **GRANTED**.

---

[1]The class actions are: (1) *Shepard, et al. v. Gerber Products Co.*, No. 21-01977; (2) *Moore v. Gerber Products Co.*, No. 21-02516; (3) *Muslin Pierre-Louis v. Gerber Products Co.*, No. 21-04791; (4) *Kelly et al. v. Gerber Products Co.* No. 21-12504; (5) *Eldridge v. Gerber Products Co.*, 21-12910; (6) *Douglas v. Gerber Products Co.*, 21-12354; (7) *Robbins v. Gerber Products Co. et al.*, 21-12666; (8) *McNealy v. Gerber Products Co.*, 21-9064; (9) *Fondacaro et al. v. Gerber Products Co.*, 21-5032; (10) *Martin et al. v. Gerber Products Co.*, 21-5846; (11) *Henry et al. v. Gerber Products Co.*, 21-5864; (12) *Wallace et al. v. Gerber Products Co.*, 21-9980; (13) *Lawrence et al. v Gerber Baby Products*, 21-13676.

## BACKGROUND

These putative class actions assert false advertising and similar claims against Gerber stemming from a February 4, 2021 report issued by a subcommittee of the United States House of Representatives[2] relating to the alleged presence of heavy metals in certain baby foods. The first-filed case in this District against Gerber stemming from the Report, *Shepard v. Gerber Products Co.* (*"Shephard"*), No. 21-01977, was filed on February 5, 2021. Since then, twelve other, similar putative class actions were filed in this Court. (*see supra* n. 1.)

On March 12, 2021, Plaintiffs in *Shephard* moved to consolidate the cases. Plaintiff in *Moore v. Gerber Products Co.*, then filed a cross-motion[3] seeking to transfer the cases to the Eastern District of Virginia. On consent of the parties and without prejudice to the *Moore* plaintiffs' request to transfer, the Court entered an Order on May 21, 2021, consolidating the then-pending cases and any other class action arising out of the same or similar operative facts subsequently filed in this Court.

The *Moore* plaintiffs and *Martin* plaintiffs have requested transfer of this consolidated action to Virginia. It appears that at least 36 plaintiffs have filed suit against Gerber in the Eastern District of Virginia alleging the same or similar claims against

---

[2] *See* Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium and Mercury (Feb. 4, 2021).

[3] Plaintiff's submission was filed as a Notice, not a cross-motion in compliance with the Federal Rules of Civil Procedure. However, because notice of the motion had been given to all parties and a briefing schedule established, the Court will treat Moore's filing as a properly filed formal motion. Moreover, Moore would not be precluded from filing a motion to transfer had it been filed as a standalone motion. For these reasons, Gerber's argument that Moore's filing was procedurally improper will not be considered as a basis to deny the motion.

Gerber. In response, Gerber has moved to transfer those cases to the District of New Jersey. On June 28, 2021, the Honorable Liam O'Grady, Senior U.S.D.J., entered an Order holding those cases – and the motion to transfer to New Jersey – in abeyance until this Court decides our motion to transfer. [ECF No. 48.][4]

**The Motion to Transfer**

This motion is somewhat unusual in that Plaintiffs[5] are seeking to transfer these consolidated cases - including their own, which they chose to file here - to another district. In the more traditional sense, it is usually a defendant seeking to transfer a case to an allegedly more convenient or appropriate forum. Plaintiffs seek transfer on two basic grounds.

First, Plaintiffs admit that they mistakenly filed suit in an improper district. Specifically, Plaintiffs state that they filed their Complaints in New Jersey under the belief that Gerber's principal place of business was in New Jersey at the time of filing. It was not. Starting in 2018 and concluding in 2019, Gerber, a Michigan corporation, undertook a relocation of its corporate headquarters from Florham Park, New Jersey to Arlington, Virginia. Thus, at the time these cases were filed, Gerber was a Michigan corporation with its principal place of business in Virginia. That would mean there is general jurisdiction over Gerber in Virginia. *See, e.g.*, *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014).

---

[4] A motion was made before the Judicial Panel on Multidistrict Litigation proposing to consolidate all of these baby food-related complaints against Gerber and other manufacturers as an MDL proceeding. The request was denied. *See* ECF No. 42.

[5] References in this Opinion to "Plaintiffs" refer only to the *Moore* and *Martin* plaintiffs that have moved to transfer venue.

Seeking to correct their error, Plaintiffs claim proceeding in New Jersey creates issues of personal jurisdiction and that it is in the best interests of all parties and the court to transfer all of these cases to a district that has general personal jurisdiction over Gerber.

Second, Plaintiffs contend that the Section 1404(a) transfer considerations (discussed, *infra*) support transfer, in particular the possibility for duplicate work and effort of counsel and the Court; and that the relative congestion of the courts favors transfer to the Eastern District. Finally, Plaintiffs contend that Gerber wants to remain in New Jersey for strategic purposes – i.e., that they believe that the requirements to certify a class under Rule 23 are more onerous in this Circuit.

Gerber and the *Shepard* Plaintiffs oppose transfer. They contend that some of the decision-making with respect to the events underlying the claims in this case occurred when Gerber was in New Jersey. Gerber also states that it will not contest personal jurisdiction in this District "with respect to this and similar disputes." (ECF No. 29 at 7.) They also contend that some *Gerber* employees that could have relevant information to the claims may be located in New Jersey.

## **LEGAL STANDARD**[6]

Section 1404(a) confers federal courts with authority to transfer a case to another district "where it may have been brought," when doing so is "in the interest of justice"

---

[6] Plaintiffs also refer to a possible transfer under Section 1406(a), but it is not clear that this Section applies in this context. Section 1406(a) applies when a case is filed in a "wrong" district. *Id.*; *see also Lafferty v. St. Riel*, 495 F.3d 72, 77 (3d Cir. 2007). At the time some of the allegations in this case occurred, Gerber's principal place of business was New Jersey. However, Gerber is not located here and has not been for some time. Plaintiffs concede they misfiled in this district - and in their view, that makes it the "wrong" district. That may or may not be the case. But given the decision with respect to Section 1404, it is not necessary to conclusively decide this question.

4

and serves "the convenience of parties and witnesses." 28 U.S.C. § 1404(a). The decision to transfer a case under § 1404(a) rests within the sound discretion of a district court. *See Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973); *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.,* 98 F. Supp. 2d 560, 564 (D.N.J. 2000). The purpose of section 1404(a) "is to prevent the waste of 'time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expenses....'" *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 479 (D.N.J. 1993) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

The moving party bears the burden of establishing (1) that the proposed transferee forum is one in which the case "might have been brought," and (2) that in the interest of justice, the proposed transferee forum is more convenient for the parties and witnesses. *See CIBC World Mkts., Inc., v. Deutsch Bank Sec., Inc.*, 309 F. Supp. 2d 637, 643 (D.N.J. 2004). The court balances private and public interest factors to determine whether the litigation would more conveniently proceed and the interests of justice would be better served by a transfer. *See Jumara v. State Farm Ins. Co.*, 55 F. 3d 873, 879 (3d Cir. 1995). Private considerations include but are not limited to: (1) plaintiffs original choice of venue; (2) defendant's forum preference; (3) where the claim arose; (4) convenience to the parties in light of their financial and physical conditions; (5) availability of witness in each fora; and (6) location of books and records. *Id*. Public considerations include: (1) the ability of each forum to enforce the judgment; (2) practical considerations that would make trial more expeditious or inexpensive; (3) relative court congestion; (4) local interest in deciding the controversy; (5) public policies of each fora; and (6) familiarity with state

5

law in diversity cases. *Id*.

While the moving party bears the burden to justify a transfer, it is "not required to show truly compelling circumstances for . . . [change of venue, but rather that] all relevant things considered, the case would be better off transferred to another district." *In re United States*, 273 F.3d 380, 388 (3d Cir. 2001) (citations omitted).[7]

## DECISION

A "transfer analysis is flexible and must be made on the unique facts of each case." *Calkins v. Dollarland, Inc.*, 117 F. Supp. 2d 421, 428 (D.N.J. 2000) (citations omitted). Here, we have a unique circumstance. Plaintiffs filed a complaint in this District attempting to secure general personal jurisdiction over a corporation based on the assumption that their principal place of business was in New Jersey. As it turns out, Plaintiffs were wrong; Gerber's principal place of business is not in New Jersey; Gerber has been sued in its actual principal place of business for the same allegations as those presented here; and now, Plaintiffs want to transfer these cases, including their own, to the actual home forum while Gerber wants to proceed in the mistakenly chosen, foreign forum.

Upon the consideration of the facts of these cases and the Section 1404(a) factors, transfer of this case to the Eastern District of Virginia is appropriate for the convenience of the parties and in the interests of justice.

**First**, there is the issue of general personal jurisdiction. This is a proposed

---

[7] Section 1404(a) only allows for a transfer to a district where a case originally could have been brought. *See* 28 U.S.C. § 1404(a); *Shutte v. Armco Stell Co.*, 431 F.2d 22, 25 (3d Cir. 1970), *cert. denied*, 401 U.S. 910 (1971). The parties do not dispute that these cases could have originally been filed in the Eastern District of Virginia.

6

nationwide class action alleging Gerber has engaged in false advertising and made affirmative misrepresentations and omissions regarding the presence of heavy metals in baby foods. Some of these events allegedly occurred while Gerber was in New Jersey, but some did not. While Gerber has stated it will not contest personal jurisdiction arising out of the *specific* events alleged in the current Complaint there is no discussion of what that means or how it should impact the transfer analysis. It also could be a slippery slope. What about an amended complaint with allegations that have nothing to do with New Jersey? Will jurisdiction later become an issue? It seems unnecessary and potentially problematic to proceed with these cases in New Jersey absent existing general jurisdiction, especially when a proposed nationwide class is involved. This is especially noteworthy when there are cases already pending against Gerber with the same allegations in its actual home forum, where it is subject to general jurisdiction and where jurisdiction would never be an issue.

**Second**, the relevant private interest factors independently support transfer to Virginia. The parties' relative choice of forum is in equipoise and generally backward. Plaintiffs filed here "by mistake" and now don't want to be here, and Defendants don't really belong here but would like to stay. For that reason, the forum preference factors cancel each other out. The remaining relevant private factors -- for example, the location of books and records and the location of witnesses -- suggest this case belong in Virginia.

Gerber has submitted the declaration of Georgina M. de la Pena, who is the company's Vice President of Human Resources, Nestle Infant Nutrition. (Civ. A. No. 21-2516; ECF No. 18-1; "la Pena Decl.") The Declaration does a thorough job of tracking

Gerber's relocation history and explaining how the company's employees worked during the transition – but in actuality, the declaration makes it clear why the case *should* be transferred to Virginia.  For example, the declaration confirms that Gerber's regulatory, medical-scientific, marketing, and legal departments are all located in Arlington, Virginia, and have been since 2019.  (*Id.* at ¶ 7).  Moreover, while it states that some (unidentified) Gerber employees were permitted to telework from New Jersey during the relocation to Virginia and that some still reside here, it does not explain the roles of these employees or what information that may have that could be relevant to the case.  Finally, the declaration does not address the fact that, apparently, the following Gerber employees – identified by Plaintiffs as "likely key witnesses" - all work in or around the Eastern District of Virginia:

- CEO and President (Tarun Malkani),
- CFO (Ramon Vega),
- Director of Corporate Quality at Nestlé Nutrition North America (Lyle Pater),
- Head of Portfolio Management at Nestlé Nutrition North America, who manages a $1 billion portfolio of more than 350 SKUs (Patrick Murray),
- Head of Supply Chain Management at Nestlé Nutrition USA (Antonio Martinez de Aragon),
- Senior Manager - Customer Development at Nestlé Nutrition North America (Miguel Hoyos),
- Associate Director, Commercial Development (Matthew Greenwood), and Brand Manager Nestlé Nutrition North America (Sina Hilbert)

(Pls.' Reply Br. 4; citing Declaration of David J. Cohen, filed in connection with the JPML proceedings and attached to the Declaration of Mark R. Rosen, Esq., as Exhibit A.)

The fact is Gerber no longer has a notable presence in New Jersey.  And while it did at some time, that misses the point in a case like this.  This case will primarily involve the testimony of witnesses now located in Virginia and the records of the company, which are also present in Virginia.  There is nothing to suggest that the claims involved in this case will involve witnesses located in New Jersey.  This is not, for example, a case involving an

8

alleged environmental spill, where presence in New Jersey might be needed for a variety of case-related functions. There is really nothing tying this case to New Jersey other than historical and outdated connections relating to where people were located at the time the cases allegedly accrued. If there was a showing that books and records remained in New Jersey or that relevant personnel remained in New Jersey, then it would perhaps be a different story. But that does not appear to be the case. And to the extent there are any witnesses in New Jersey, they would appear to be Gerber employees that are presumed willing to appear in Virginia. Plaintiffs have shown that the relevant private factors favor transfer to the Eastern District of Virginia.

**Third,** the public factors also support transfer. For one thing, Gerber is a Virginia - based corporation subject to general personal jurisdiction in Virginia; thus, enforcing a judgment and proceeding to trial in Virginia would seem to be more convenient in Virginia. There is also the fact that the District Court in New Jersey has been operating on a severe judicial emergency for years, and the relevant disposition times set forth in the briefing show that the Eastern District of Virginia disposition time is manifestly favorable. While the situation in New Jersey is slowly improving, this District still is burdened by years of understaffing, judicial vacancies, and high filing rates. For that reason, Virginia is a relatively less congested district than New Jersey. The remaining public interest factors are in balance or otherwise do not apply. However, for the reasons stated above, the public interest factors also support transfer.

**Finally**, the opposing parties' contention that transfer should be denied based on the first-filed rule is not persuasive. The *Sheppard* case was apparently the first filed action

relating to the alleged claims against Gerber. The "first-to-file" rule permits "trial judges to exercise their discretion by enjoining the subsequent prosecution of similar cases ... in different federal district courts." *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988). Where related suits "involving the same parties and subject matter are pending concurrently, the first-filed suit should have priority absent a showing that the balance of inconvenience favors transfer or unless there are special circumstances which justify giving priority to the second suit." *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 487 (D.N.J. 1993). The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." *E.E.O.C.*, 850 F.2d at 972. "The letter and the spirit of the first-filed rule ... are grounded on equitable principles" and "the rule's primary purpose is to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments." *Id.* at 977.

However, the first-to-file rule is not absolute. *Federal Trade Comm. v. Neora*, 2020 WL 4282753, at *3-4 (D.N.J. July 27, 2020). "There are exceptions, which provide that a court may decline to apply the rule on the basis of "(1) rare or extraordinary circumstances; (2) inequitable conduct; (3) bad faith; (4) forum shopping; (5); where the later-filed action has developed further than the first-filed action; and (6) 'when the first filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum." *Id*. (quoting *EEOC*, 850 F.2d at 976).

This Court has not been asked to dismiss or enjoin any proceeding elsewhere, nor would it do so. Instead, Gerber has held up the first-filed rule as an additional basis to keep these cases here (and, in its view, to transfer the Virginia cases to New Jersey). However,

as stated above, the first-to-file rule is not absolute and at its core is about "equitable principles." *Id.* Nor must the rule be enforced when "the balance of inconvenience favors transfer or . . . [where] there are special circumstances which justify giving priority to the second suit." *Ricoh,* 817 F. Supp. at 487.

Here, the Court has explained how this is somewhat of a procedurally unusual circumstance resulting from the mistake in filing in this forum, and Plaintiffs' request to transfer this case to another forum, which is actually Gerber's home forum and has cases pending, and where the bulk of Gerber's executives, and books and records are located. As is the result when the traditional Section 1404(a) factors are considered, the Court finds for the reasons explained above, the interests of justice support transfer of these cases to Virginia, where they could be joined with the cases pending there, free of any plausible concern relating to jurisdiction and in Gerber's home forum.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion to transfer venue is **GRANTED**. An appropriate Order will be entered.

**s/Mark Falk**
**MARK FALK**
**Chief United States Magistrate Judge**

**DATED: September 13, 2021**